# United States Bankruptcy Court

## United States District Of Massachusetts

| | |
|---|---|
| In re Sandra J. Potter and Michael A. Potter, | Case No. 1:25-bk-10563 |
| Debtors | Chapter 7 |

## JOINT OBJECTIONS

NOW COMES, Wright Industries, Inc., and Thomas Mackey, creditors of the debtors in the above titled bankruptcy action, ("Creditors") by and through their undersigned counsel, objects to the allowance of the following exemptions claimed by the debtors:

### 7 Herds Hill, Gloucester, MA 01930
### Line from Schedule A/B: 1.1

The Debtors have claimed that the value of their property is valued at $1,000,000.00 and are claiming that exemptions under Mass. Gen. Laws c. 188, §§ 1, 3 (a "homestead exemption") affords them an exemptions equivalent to the entire amount that the debtors property is allegedly worth. However, the Debtors' property, 7 Herds Hill, Gloucester, MA 01930 is **not** valued at $1,000,000.00. For tax purposes, Gloucester, MA has assessed the property as being valued at $1,272,300 in 2025. *See* **Ex. A**. There is also reason to believe that the debtors could sell their home for a much greater price. *See e.g.* **Ex. B** (Zillow estimating Debtor's home is worth $1,441.200; and the Debtor's neighboring home sold for $2.1 million in December of 2024). Debtor's claimed their property is valued at $1,000,000 likely because that is the maximum amount that can be exempted under a valid homestead exemption. *See* G. L. c. 188 §§ 1, 3. A property worth more than that amount is at risk of being liquidated to pay the debts of creditors. The undersigned creditors would be likely made whole if just the Debtor's property of 7 Herd's Hill, Gloucester, MA 01930 was sold at its tax assessed value.

However, there is good reason to believe that the Debtors are not entitled to the $1,000,000.00 homestead exemption. 7 Herds Hill, Gloucester, MA 01930 is held in trust by the Seven Herd's Hill Realty Trust. *See* **Ex. C** at p. 19 (Deposition of Michael Potter); and **Ex. D** at p. 6. (Deposition of Sandra Potter). M.G.L. c. 188 § 5(a) states "A declaration of homestead shall be in writing, signed and

acknowledged under penalty of perjury by each owner to be benefited by the homestead, except as provided in clause (4). . . . (4) **if the home is owned in trust, only the trustee shall execute the declaration.**" (emphasis added). On March 21, 2025, at 9:18 am, just twenty-eight minutes before filing the petition for bankruptcy, Debtor Michael Potter filed a declaration of homestead for 7 Herds' Hill under M.G.L. c 188 § 3. **Ex. E** (Michael Potter Declaration of Homestead). However, both Debtors testified under oath that Sandra Potter, not Michael Potter was the Trustee for Seven Herd's Hill. *See* **Ex. C** at p. 19-20; and **Ex. D** at p. 6-7. M.G.L. c. § 1. If a party does not have a valid declaration of homestead, they are instead entitled to an automatic homestead exemption which is,

> an exemption in the amount of $125,000 pursuant to section 4; provided, however, that: (1) with respect to a home owned as joint tenants or as tenants by the entirety, the automatic homestead exemption shall remain whole and unallocated between the owners, provided that the owners together shall not be entitled to an automatic homestead exemption in excess of $125,000; and (2) with respect to a home owned by multiple owners as tenants in common or as trust beneficiaries, the automatic homestead exemption shall be allocated among all owners in proportion to their respective ownership interests.

M.G.L. c 188 § 1

As Michael Potter is not the trustee of 7 Herds' Hill Realty Trust, his Declaration of Homestead is not valid, and the Debtors should only be afforded the automatic homestead exemption.

### DEBTOR'S AUTOMOBILES
### Lines from Schedule A/B: 3.1-3.3.

The Debtors claim three vehicles as exempt under M.G.L. c 235 § 34(16), a 2016 Volvo, reasonably believed to be a model XC60 with t5 Premier AWD trim; *See* **Ex. F.** (Vin Report); a 1999 Cadilac El Dorado with 60,000 miles; and a 1998 Volkswagen Passat with 80,000 miles. M.G.L. c 235 §34(16) provides an exemption for "[a]n automobile necessary for the debtor's personal transportation or to secure or maintain employment." The two debtors claim to both have interests in all three vehicles, and that all three vehicles are in good condition. It is not necessary for two debtors to maintain three vehicles at least some of the vehicles cannot classified as exempt.

### 7 Herds Hill, Gloucester, MA 01930
### Line from Schedule A/B: 6.1

The Debtors again claim their property of 7 Herd's Hill, Gloucester, MA as being exempt, however this time it is valued at $3,000 and is exempt under M.G.L. c 235 § 34(2). M.G.L. c 235 § 34(2) exempts "household <u>furniture</u> necessary for the debtor and the debtor's family, not exceeding $15,000 in value." No furniture is described or included within line from schedule A/B 6.1 or anywhere else on their summary of assets. They merely state that their entire list of "household goods and furnishings" are "7 Herds Hill, Gloucester, MA 01930" a house valued at over $1 million dollars which somehow has only $3,000.00 in major appliances, furniture, linens, china, kitchenware, etc. Debtors' claimed values are incredulous and belie reason.

### (1) Cellphone; (2) TVs; (1) PCs; (1) Tablet; (1) Printer
### Line from Schedule A/B: 7.1

Debtors claim the property identified on Line 7.1 as being valued at $500 and entirely exempt under M.G.L. c. 235, § 34(2). As stated previously, M.G.L. c 235 § 34(2) is only for necessary household furniture. M.G.L. c. 235 § 34(2) does not apply to the items identified in Line 7.1. Had they sought an exemption under M.G.L. c. 235 § 34(12) the Debtors could have exempted "1 computer and 1 television, in actual use by each debtor's family." However, Debtors failed to seek that exemption and, further they sought to exempt a greater amount of items than would have been allowed had they relied on the proper exemption.

### (1) Set of golf clubs
### Line from Schedule A/B: 9.1

Debtors claim that they possess one set of golf clubs valued at $100 and entirely exempt from distribution to their creditors under M.G.L. c. 235 § 34(17). The valuation of the Debtors' golf clubs being a mere $100 is not credible. The Debtor, Sandra Potter, testified at the creditors meeting that she has a membership at Bass Rocks Golf Club in Gloucester, MA. Bass Rocks Golf Club is an exclusive private golf and social club with high membership fees. An individual who maintains a membership at such a golf course would be unlikely to maintain a set of golf clubs so "old" that they could be valued at $100, particularly when many golf sets are valued above $1,000. M.G.L. c. 235 § 34(17) exempts "[t]he debtor's aggregate interest in any personal property, not to exceed $1,000 in value, plus up to $5,000 of any unused dollar amount of the aggregate exemptions provided under clauses Second, Fifth and Sixteenth."

### 7 Herds Hill Gloucester, MA 01930
### Line from Schedule A/B: 11.1

Debtors yet again claim 7 Herds Hill as their property entitled to exemption, this time valued at $500, and exempt under M.G.L. c. 235 § 34(1). M.G.L. c. 235 § 34(1) exempts,

> The necessary wearing apparel, beds and bedding for the debtor and the debtor's family, 1 heating unit used for warming the dwelling house, 1 stove, 1 refrigerator, 1 freezer and 1 hot water heater used primarily for the personal, family or household use of the debtor or a debtor's family and the amount each month, not exceeding $500, reasonably necessary to pay for fuel, heat, refrigeration, water, hot water and light for the debtor and the debtor's family;

The exemption does not apply to the Debtors' residence. Line 11.1 is merely titled "Clothes" however, the Debtors have not identified what clothes they have. There are two Debtors in this action, and they both presented to the creditors meeting wearing clothes, they have also been witnessed by the undersigned attorneys in various courts wearing several different outfits, including suits. Even if the Debtors properly described the clothes that they owned in the summary of their assets, many of them would not be categorized as "necessary." The Debtors summary of assets is not an accurate representation of their assets. Their "alleged $500 exemption" should be rejected.

### (1) Pair earrings; (1) neckless [sic]; (2) brackets [sic]; (2) watches
### Line from Schedule A/B: 12.1

Debtors claim that their assets listed in Line 12.1 are collectively valued at $1,000 and exempt under M.G.L. c. 235 § 34(18). M.G.L. c. 235 § 34(18) exempts "[t]he debtor's aggregate interest, not to exceed $1,225 in value, in jewelry held primarily for the personal, family or household use of the debtor or the debtor's spouse or dependent." This bankruptcy action is instituted by a married couple; however their list of assets fails to include any wedding rings, and it is believed that the Debtor, Sandra Potter is in possession of multiple pairs of earrings, necklaces, and bracelets. The valuation of the proposed items is also suspect as the Debtors have not provided any description as to what the jewelry items are made of. The price of gold has been at record levels in the last several months, and any gold jewelry likely would be exceedingly valuable at the date the Debtors petitioned for bankruptcy.

### Cash; Bank of America; Citizens Bank;
### Lines from Schedule A/B: 16.1, 17.1-17.2

Debtors claim that their cash and bank account statements are such that they would be exempt from discharge under M.G.L. c. 235 § 34(15) and c. 246 § 28A. There is however reason to doubt that the amounts provided by the Debtors is accurate. Just prior to the Debtors filing their petition for bankruptcy, Creditor Thomas Mackey, received Debtor, Sandra "Koch" Potter's Bank of America bank statements covering December 13, 2024, until February 11, 2025. *See* **Ex. G** The statements show that there is $3,000 worth of unexplained deposits made into Sandra Potter's account from an ATM in Gloucester. Her Bank of America account alone received $4,503.94 in deposits between December 13, 2024, and January 3, 2025; then another $5,697.93 in deposits between January 15, 2025, and January 31, 2025. **Ex. G**. The Debtors are entitled to an exemption as claimed, however a proper examination of their accounts and assets should be done before an exemption should be applied.

### CONCLUSION

Based on the forgoing, the creditors, Wright Industries, Inc., and Thomas Mackey request that the exclusions not be allowed as they are not within the bounds of the law, and further it would result in an inequitable result, as the creditors would not be able to recover from the debtors what they are rightfully owed.

Wright Industries, Inc.,

By his attorneys,
/s/Parker T. Zellem
PARKER ZELLEM, ESQ.
BBO #713827
FARRELL SMITH O'CONNELL
AARSHEIM APRANS LLP
Chatham • Salem • Providence •
Wilmington, NC
27 Congress Street, Suite 508
Salem, MA 01970
Tel: 978-744-8918
pzellem@fsofirm.com

Thomas Mackey By his attorneys,

/s/ Joseph M. Orlando Jr.
JOSEPH M. ORANDO JR. ESQ
BBO #680995
Orlando & Associates PC
One Wester Avenue
Gloucester, MA 01930
978-283-8100
Jmorlandojr@orlandoassociates.com

### CERTIFICATE OF SERVICE

I _____, hereby certify that on this 12th day of June, 2025, I served the forgoing objection to attorney for the debtors, Barry Levine, Esq, via electronic mail at:

Barry R. Levine, Esq
100 Cummings Center – Suite 327G
Beverly, MA 01915
(978) 922-8440
Barry@levineslaw.com

Dated: June 12, 2025                                    _____

Pages: 1-17
Exhibits: 20-21

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS                    GLOUCESTER DISTRICT COURT
                     CIVIL ACTION NO.: 2239CV000006

* * * * * * * * * * * * * * * * * *

WRIGHT INDUSTRIES, INC.,
        Plaintiff

vs.

MICHAEL POTTER, Individually and
d/b/a NORSTAR REALTY CORPORATION,
SANDRA POTTER, Individually and
as Trustee of 119 MARTIN STREET
REALTY TRUST, and 119 MARTIN
STREET REALTY TRUST,
        Defendants
* * * * * * * * * * * * * * * * * *

DEPOSITION of **SANDRA POTTER,** a witness

called on behalf of the Plaintiff, taken pursuant to

the applicable provisions of the Massachusetts Rules

of Civil Procedure, before Maria C. Puglisi,

Professional Court Reporter and Notary Public in and

for the Commonwealth of Massachusetts, at Farrell

Smith O'Connell Aarsheim Aprans LLP, 27 Congress

Street, Salem, Massachusetts 01970, on Tuesday,

September 20, 2022, commencing at 11:53 a.m.

**NORTH SHORE COURT REPORTING**
85 Eastern Avenue, Suite 215
Gloucester, Massachusetts 01930
(978) 281-6886
nscourtreporting@aol.com

2

APPEARANCES:

DAVID S. SMITH, ESQ.
Farrell Smith O'Connell Aarsheim Aprans LLP
27 Congress Street, Suite 109
Salem, Massachusetts 01970
(978) 744-8918
dsmith@fsofirm.com
    Representing the Plaintiff


CHRISTINE ANN FARO, ESQ.
10 Liberty Street
Suite 112
Danvers, Massachusetts 01923
(978) 922-3300
christine.a.faro@gmail.com
    Representing Sandra Potter



Also present:

Michael Potter

3

I N D E X

DEPOSITION OF:                    DIRECT    CROSS    REDIRECT    RECROSS

**SANDRA POTTER**

(By Mr. Smith)                       5

E X H I B I T S

| No. | Description | Evid |
|-----|-------------|------|
| 4 | Declaration of Trust Establishing The Martin 119 Realty Trust | 5 |
| 20 | Handwritten Note | 10 |
| 21 | 119 Martin Street Realty Trust Answers to Interrogatories | 14 |

4

1                          STIPULATIONS

2               It is hereby stipulated and agreed by and

3          between counsel for the respective parties that the

4          deposition will be read and signed under the pains

5          and penalties of perjury within thirty (30) days of

6          receipt of the transcript.  However, if not read and

7          signed within thirty (30) days, the deposition will

8          be deemed signed.

9               It is further stipulated and agreed that

10         all objections and motions to strike, except

11         objections as to the form of the question, are

12         reserved to the time of trial.

13              **SANDRA POTTER**, having been satisfactorily

14         identified by the production of her Massachusetts

15         driver's license number S75403591 and duly sworn by

16         the Notary Public, was examined and testified as

17         follows:

18                   MR. SMITH:  Good morning.

19                   THE WITNESS:  Good morning.

20                   MR. SMITH:  My name is David Smith.  I am

21         representing Wright Industries in an action against

22         you individually and as trustee.  Have you ever been

23         deposed before?

24                   THE WITNESS:  Yes, recently.

**Page 5**

1    MR. SMITH:  So, the same ground rules --
2    THE WITNESS:  Okay.
3    MR. SMITH:  -- as what they told you.
4    DIRECT EXAMINATION
5    (By Mr. Smith):
6  Q  And I ask these first two questions of everybody.
7        Are you under the influence of drugs or
8     alcohol?
9  A  No, I'm not.
10 Q  And do you have any physical or mental impairments
11    that would hinder your ability to answer my questions
12    today?
13 A  No, I don't.
14 Q  All right, great.
15       How long have you been married to
16    Mr. Potter?
17 A  Twenty-one years.
18 Q  And where do you reside?
19 A  In 7 Herds Hill, Gloucester, Mass.
20 Q  And it's just the two of you there?
21 A  Yes.
22 Q  How did you become involved in the property at
23    119 Martin Street in Essex?
24 A  My first involvement was when Michael came home with

**Page 6**

1     the financial papers and said I had to sign, and I'm
2     not sure of the date.
3  Q  Why did he say you had to sign?
4  A  Something about for the mortgage.  He wasn't able to
5     get the mortgage, so that's why I was made trustee.
6  Q  And was that with Citizens or was that with Atlantic
7     Financial?
8  A  I think it must have been Atlantic Financial.
9  Q  And when he came home and said you had to sign this,
10    did you guys have a discussion about how this was
11    going to impact you?
12 A  No.  I was just originally upset because it put a
13    lien on our residence.
14 Q  And that's --
15 A  And he assured me nothing was going to happen.  And
16    that was all the discussion.  He said I had to sign
17    them right away because they had to be right back to
18    wherever they went.
19 Q  Now, you heard me earlier talk about the 7 Herds Hill
20    Realty Trust?
21 A  Yes.
22 Q  Are you the trustee of that trust?
23 A  I am presently, and it was after all this happened.
24    I asked him to ask Trevor Hayden to please do that

**Page 7**

1     because it made me very, very nervous that he might
2     turn around and sell the house.  Who knows?  I just
3     didn't know.
4  Q  So, at the time that you financed, he was the trustee
5     of 7 Herds Hill?
6  A  I believe so; yes.
7  Q  Who are the beneficiaries of 7 Herds Hill?
8  A  I don't think there are any; not to my knowledge,
9     but --
10 Q  Who are the beneficiaries of the Martin 119 Realty
11    Trust?
12 A  I have no idea.
13 Q  Did you ever see a schedule of beneficiaries?
14 A  No.
15 Q  After the property was sold, 119 Martin Street --
16 A  Yes.
17 Q  -- did the trust complete a tax return?
18 A  I don't know.  Mike was handling everything, so I
19    can't answer that, or say not to my knowledge.  I
20    don't know.
21       MR. SMITH:  And just for the record, we're
22    using the same exhibits from Mike Potter's
23    deposition.
24 Q  Now, you didn't see any of the invoices, right?

**Page 8**

1  A  That's correct.
2        MS. FARO:  So, those are Exhibits 15
3     through --
4        MR. SMITH:  One through 8.
5        MS. FARO:  No, the invoices --
6        MR. SMITH:  I'm sorry.
7        MS. FARO:  She never saw Exhibits --
8        MR. SMITH:  I'm sorry.
9        MS. FARO:  Yeah.  I just want to put the
10    exhibits --
11       MR. SMITH:  Sixteen to 19.
12 Q  When was the first time you went to the property?
13 A  I can't give you an exact date, but after Michael had
14    purchased the property.  So, it was after I signed
15    that particular form.
16 Q  I'm going to show you Exhibit 4 and ask if you're
17    familiar with it.
18 A  I am, although I don't know if I fully read the whole
19    thing.  But yes.  That's my signature on it.
20 Q  And that's the declaration of trust?
21 A  Okay, that I really probably didn't read.
22 Q  I'm not criticizing whether you read it or not.
23 A  But it is my signature.
24 Q  And it says at the bottom of the last page "Schedule

9

1    of Beneficial Interests." And you're not aware of
2    who the beneficiaries are to the trust?
3  A  No.
4  Q  Now, you understand the claims that are being made by
5    Wright Industries here?
6  A  Yes. I've seen them; yes.
7  Q  And do you have -- I understand your -- let me
8    characterize your position for a moment. Your
9    position is, I had nothing to do with this?
10 A  Yeah.
11 Q  As you sit here, do you think Wright Industries is
12    entitled to be paid for the work it did?
13 A  I would assume if someone did work that someone would
14    have a contract with him and that things would be
15    spelled out. And if he did do work, yes; I assume
16    that he should be paid for whatever agreement both
17    parties could come to.
18       THE COURT REPORTER: Do you want me to mark
19    Exhibit 4 from his deposition Exhibit 1 in hers?
20       MR. SMITH: No. We'll use the same numbers
21    and just count -- we'll go to this one as number 20,
22    if that's okay with you Christine, to mark this as
23    Exhibit 20.
24       MS. FARO: Yeah; that's fine.

10

1       (Exhibit 20 marked, Handwritten
2       Note)
3  Q  This is a document. I'll represent you haven't seen
4    this before today, probably.
5  A  (Witness reviewing exhibit.) No. I know that is
6    correct. I had a meeting with someone, and I ran
7    into them and --
8  Q  Let me slow you down.
9       There's a reference there of August 14th in
10    the top left corner. Do you see that?
11 A  Does it say what year?
12 Q  It doesn't say the year. So, I know it wasn't this
13    past August.
14 A  No. It was probably about four years ago.
15 Q  Okay.
16 A  It wasn't '16 or '17. I do know that.
17 Q  So, it's after -- it could have been '18 or '19?
18 A  Yeah. Twenty? Yeah; whatever.
19 Q  And you saw the Wrights?
20 A  Yeah, and they didn't come over and say hello, so I
21    didn't know what was wrong. And then I had just been
22    told prior that there was a difference between you,
23    Michael Potter and the Wrights, because they used to
24    be very friendly and I hadn't seen them for a long

11

1    time. So, I wasn't fully aware of the situation, so
2    I apologized for whatever happened. I thought it was
3    the right thing to do.
4  Q  And where was that?
5  A  When was that?
6  Q  Where was it?
7  A  The Village restaurant in Essex.
8  Q  It says in here that you told them that the bills had
9    all been paid at the time of the closing?
10 A  Okay. At the time of the closing, I was asked by the
11    closing lawyer who had asked Michael if all the bills
12    had been paid, and he said yes. Then Trevor Hayden
13    directed me to sign. So, I assumed they were all
14    paid because he asked Michael on several occasions if
15    they had been paid and he said yes, and then he
16    directed me to sign at the closing.
17 Q  Who is Trevor Hayden?
18 A  He is the lawyer, I guess, that -- he was the closing
19    lawyer, but I'm not sure if Michael used him prior to
20    that.
21 Q  Did you get a copy of the closing documents from that
22    closing?
23 A  Michael did.
24       MR. SMITH: We're on the record and you're

12

1    in the room, but that should be produced as part of
2    the documents.
3       MR. POTTER: This?
4       MR. SMITH: No.
5       MS. FARO: No; closing records from
6    119 Martin Street.
7  Q  Did you receive any financial benefit from this
8    property?
9  A  No, I did not.
10 Q  Did Mr. Potter spend any of the money from those
11    proceeds in any way on 7 Herds Hill?
12 A  Not to my knowledge.
13 Q  Are you in agreement with his prior testimony that he
14    was the construction supervisor?
15 A  I'm very vague on that. We never discussed anything.
16    So, if he assumed he was, I did not give him -- it
17    was not discussed at all. I don't know how to put
18    it. He just took the loan papers, did whatever he
19    did, and all of a sudden set up his account and just
20    started work. Other than that, I don't know exactly
21    how things evolved step by step. But there was never
22    any discussion between Michael and I as to having him
23    as a construction supervisor.
24 Q  When Christine was asking Mr. Potter about the

13

1  bankruptcy, when was that?  Do you know?
2  A  I think maybe seven years ago.
3  Q  And as a result of the bankruptcy, or maybe before
4     the bankruptcy, have you maintained your finances
5     separate from his?
6  A  I've always had my finances separate.  He's always
7     wanted separate finances.
8  Q  And I'm curious.  Again, I didn't ask this in the
9     beginning because I was trying to make this one
10    shorter.
11 A  Yeah.
12 Q  What did you do professionally --
13 A  I worked for a chemical company, and I was there, I
14    think, 21 years.
15 Q  What did you do?
16 A  I did a variety of things -- product manager,
17    application manager, worked on the floor as a
18    chemical engineer, did a bunch of things.  My
19    background is in the sciences.
20 Q  Where was that?
21 A  That was at Stahl USA in Peabody, Mass.
22 Q  Was it discussed between you and Mr. Potter as to
23    whether the intention was to make a profit on this
24    property?

14

1  A  It was never discussed, but that was an assumption I
2     had made.
3  Q  And to be clear, this was not a home that was being
4     renovated for him to move into?
5  A  I don't think so.  I'll just say not to my knowledge.
6  Q  So, my next question is more of a broader one, and I
7     asked this in my interrogatory questions to you.
8             MR. SMITH:  Can we have that one marked?
9             THE COURT REPORTER:  This will be 21.
10                 (Exhibit 21 marked, 119 Martin
11                  Street Realty Trust Answers to
12                  Interrogatories)
13 Q  Can you look at number 23?  The response to number 23
14    is an objection and "is not a party to a contract,"
15    and I get all that.  My question here to you is, are
16    there any written communications between you and
17    anybody regarding Wright Industries?
18 A  No.
19 Q  And so, let me ask a follow-up question.  My
20    follow-up to that is, has your attorney been
21    communicating with Mr. Potter?
22 A  Has my attorney?
23 Q  In writing.
24             MS. FARO:  Any communications with

15

1  Mr. Potter have been -- you've been copied on.
2             MR. SMITH:  Okay.  That's fine.
3             MS. FARO:  That's basically it, okay?  That
4  is basically it; yeah.
5             MR. SMITH:  Okay.  I'm going to suspend.
6  If I had to call her back, it would be on a limited
7  basis --
8             MS. FARO:  That's fine.
9             MR. SMITH:  -- for whatever was signed at
10 the closing, which I would have expected to have
11 gotten the documents during discovery.
12                 (WHEREUPON, the deposition was
13                  suspended at 12:11 p.m.)
14
15
16
17
18
19
20
21
22
23
24

16

### SIGNATURE PAGE/ERRATA SHEET

      I, **SANDRA POTTER**, the undersigned, do hereby

certify that I have read the foregoing transcript, and to

the best of my knowledge said transcript is true and

accurate, with the exceptions of the following desired

changes listed below:

PAGE    LINE    CORRECTION                                    REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

    SIGNED this _____ day of _____, 2022.


                                 _____
                                 SANDRA POTTER

17

COMMONWEALTH OF MASSACHUSETTS

I, Maria C. Puglisi, Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the foregoing deposition of **SANDRA POTTER** was taken before me on Tuesday, September 20, 2022.  The said testimony is a true and accurate transcript of my system tapes to the best of my knowledge, skill and ability.

I am not connected by blood or marriage with any of the said parties, nor interested directly or indirectly in the matter in controversy.

IN WITNESS WHEREOF, I have hereunto set my hand and Notary Seal this 30th  day of September, 2022.

*Maria C. Puglisi*

MARIA C. PUGLISI, Notary Public
My commission expires: 01/30/2026

**PLEASE NOTE: THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE CERTIFYING REPORTER.**



SO.ESSEX #47 Bk:42624 Pg:141
03/21/2025 09:19 AM HMSTD Pg 1/2

## DECLARATION OF HOMESTEAD
### M.G.L. c. 188 (For Homes Owned by Trustee)

I, Michael A. Potter, Trustee of the Seven Herd's Hill Realty Trust u/d/t dated July 29, 2002, hereby declare a homestead pursuant to M.G.L. c. 188 §3, for the benefit of the beneficiary hereinafter named with respect to the herein-described premises and state as follows:

1.  Said Declaration of Trust is

    a.  [X] recorded in the Essex South District Registry of Deeds in Book 19005, Page 166.

    b.  [ ] filed in the _____ Registry District of the Land Court as Document No. _____

    c.  [ ] described in a Trustee's Certificate under M.G.L. c. 184, §35:

        [ ] recorded in Essex South District Registry of Deeds in Book _____, Page _____.

        [ ] filed in said District as Document No. _____

    d.  [ ] Other (describe derivation): _____

2.  I am the owner as Trustee of the premises at 7 Herd's Hill, Gloucester, Massachusetts by virtue of:

    a.  [X] two deeds from Kenneth Bruce Herdman and Shirley J. Herdman: one dated July 10, 2002, recorded with said Deeds at Book 19005, Page 173; and one dated November 10, 2011 and recorded with said Deeds at Book 30917, Page 547.

    b.  [ ] Certificate of Title No. _____ in said District

    c.  [ ] the Will of _____, _____ Probate Case No. _____

    d.  [ ] Other [describe document and provide appropriate recording/registration/court docket information]: _____

which premises Sandra J. Potter, as beneficiary of the trust, occupies or intends to occupy as her principal residence.

6/12/25, 11:36 AM

Case 25-10563   Doc 19   Filed 06/12/25   Entered 06/12/25 19:14:01   Desc Main
Document   Page 17 of 27
VIN Decoder Result|YV4612RK8G2821138 | FAXVIN

🐾 **FAXVIN**™

● ——— ●
Type a VIN   Verification   Records Check   Report

# 2016 Volvo XC60

**Successfully Decoded**

 **2016 Volvo XC60**
YV4612RK8G2821138

| VIN | Make | Model | Year | Trim |
|---|---|---|---|---|
| YV4612RK8G2821138 | Volvo | XC60 | 2016 | T5 Premier AWD |

| Style/Body | Engine | Manufactured in | Age |
|---|---|---|---|
| SPORT UTILITY 4-DR | 2.5L L5 DOHC 20V TURBO | Ghent, Belgium | 9 years |

| Transmission | VIN Validation | History Data |
|---|---|---|
| 8-Speed Automatic | ⊘ Check Digit is Correct | ⊘ Records Found |

06/12/2025   15:01   (FAX)   P. 018/047

6/12/25, 11:36 AM

Case 25-10563   Doc 19   Filed 06/12/25   Entered 06/12/25 19:14:01   Desc Main
Document   Page 18 of 27
VIN Decoder Result YV4612RK8G2821138 | FAXVIN

Change VIN

Full Report >



# 7 HERD'S HILL

**Location**   7 HERD'S HILL

**Mblu**   201/ 152/ / /

**Assessment**   $1,272,300

**PID**   100870

**Building Count**   1

## Current Value

| Assessment | | | |
|---|---|---|---|
| **Valuation Year** | **Improvements** | **Land** | **Total** |
| 2025 | $794,100 | $478,200 | $1,272,300 |

## Ownership History

| Ownership History | | | |
|---|---|---|---|
| **Owner** | **Sale Price** | **Book & Page** | **Sale Date** |
| POTTER MICHAEL A TR | $337,500 | 19005/0173 | 07/30/2002 |
| HERDMAN KENNETH & SHIRLEY | $0 | 5864/0038 | 05/08/1972 |

## Building Information

**Building 1 : Section 1**

**Year Built:**              2011
**Living Area:**            2,833
**Building Percent Good:**   93

| Building Attributes | | |
|---|---|---|
| | **Field** | **Description** |
| Style: | | Colonial |
| Model | | Residential |
| Grade: | | Average +10 |
| Stories: | | 2 Stories |
| Occupancy | | 1 |
| Exterior Wall 1 | | Shingle |
| Exterior Wall 2 | | |
| Roof Structure: | | Gable/Hip |
| Roof Cover | | Asph/F Gls/Cmp |
| Interior Wall 1 | | Drywall/Sheet |
| Interior Wall 2 | | |
| Interior Flr 1 | | Hardwood |
| Interior Flr 2 | | Carpet |
| Heat Fuel | | Gas |
| Heat Type: | | Forced Air-Duc |
| AC Type: | | None |
| Total Bedrooms: | | 3 Bedrooms |
| Total Bthrms: | | 3 |

**Building Photo**



(https://images.vgsi.com/photos2/GloucesterMAPhotos/\0048\IMG_4096_

| Total Half Baths: | 0 |
|---|---|
| Total Xtra Fixtrs: | |
| Total Rooms: | |
| Bath Style: | |
| Kitchen Style: | |

## Building Layout



(ParcelSketch.ashx?pid=100870&bid=14733)

| Building Sub-Areas (sq ft) | | | Legend |
|---|---|---|---|
| Code | Description | Gross Area | Living Area |
| FUS | Upper Story, Finished | 1,391 | 1,391 |
| BAS | First Floor | 1,219 | 1,219 |
| EAF | Attic, Expansion, Finished | 636 | 223 |
| FGR | Garage, Finished | 808 | 0 |
| FOP | Porch, Open, Finished | 408 | 0 |
| UBM | Basement, Unfinished | 995 | 0 |
| WDK | Deck, Wood | 533 | 0 |
| | | 5,990 | 2,833 |

## Extra Features

| Extra Features | Legend |
|---|---|
| No Data for Extra Features | |

## Land

### Land Use

| | |
|---|---|
| Use Code | 1010 |
| Description | SING FAM |
| Zone | R-30 |
| Neighborhood | 3 |

### Land Line Valuation

| | |
|---|---|
| Size (Acres) | 1.82 |
| Depth | |
| Assessed Value | $478,200 |

## Outbuildings

| Outbuildings | Legend |
|---|---|
| No Data for Outbuildings | |

## Valuation History

| Assessment | | | |
|---|---|---|---|
| **Valuation Year** | **Improvements** | **Land** | **Total** |
| 2024 | $794,100 | $455,100 | $1,249,200 |
| 2023 | $692,900 | $406,200 | $1,099,100 |
| 2022 | $606,200 | $345,500 | $951,700 |

(c) 2025 Vision Government Solutions, Inc. All rights reserved.

<  Back to search          **Zillow**          ♡ Save   ⬆ Share   ∘∘∘ More



**Zestimate®**

# $1,441,200

7 Herds HI, Gloucester, MA 01930

| **3** beds | **3** baths | **2,833** sqft |

Est. refi payment: $9,067/mo  ⓢ  Refinance your loan

🏠 SingleFamily          🏗 Built in 2011          📐 1.82 Acres Lot

🏠 $1,441,200 Zestimate®     📊 $509/sqft          🏡 $5,975 Estimated rent

---

# Home value

Zestimate®
**$1,441,200**

Estimated sales range
**$1.30M - $1.60M**

Rent Zestimate®

6/12/25, 2:50 PM                    9 Herds Hl, Gloucester, MA 01930 | Zillow

 **Zillow**

‹ Back to search                               ♡ Save   ⬆ Share   ⦿⦿⦿ More



Sold

# $2,150,000

9 Herds Hl, Gloucester, MA 01930

| **5** | **6** | **6,312** |
|---|---|---|
| beds | baths | sqft |

Est. refi payment: $13,527/mo ⓢ **Refinance your loan**

🏠 Single Family Residence    🔨 Built in 2002    ⚖ 1.6 Acres Lot

🏡 $2,230,500 Zestimate®    📊 $341/sqft    🏷 $8,354 Estimated rent

## Home value

Zestimate®
**$2,230,500**



**ORLANDO**
**& ASSOCIATES**

"TIP THE SCALES IN YOUR FAVOR"

Joseph M. Orlando, Jr., Esq.
Joseph M. Orlando, Esq.
Brian S. McCormick, Esq.
Nolan R. Young, Esq.
Amanda Orlando, Esq.

February 19, 2025

Ms. Sandra Potter
PO Box 557
Gloucester, MA 01930

Dear Ms. Potter:

Please find enclosed your original documents which you dropped off at this office yesterday. They have been scanned into our system.

Thank you for your attention to this matter.

Very truly yours,

*Joseph M. Orlando, Jr.*
Joseph M. Orlando, Jr., Esq.
JMOjr/caa

Enclosures

One Western Avenue ◆ Gloucester, Massachusetts 01930 ◆ Ph: (978) 283-8100 ◆ Fx: (978) 283-8507
firm@orlandoassociates.com ◆ www.orlandoassociates.com

# BARRY R. LEVINE

**ATTORNEY AT LAW**
**100 CUMMINGS CENTER – SUITE 327G**
**BEVERLY, MA 01915**

—

(978) 922-8440
FAX: (978) 998-4636
barry@levineslaw.com
www.levineslaw.com

February 13, 2025

To Whom It May Concern:

Please be advised that this office represents Michael Potter in a personal
bankruptcy. We anticipate filing his bankruptcy in March.

Very truly yours,

Barry R. Levine

BRL/kal